IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHARLES BECOAT II,<br>    Plaintiff,<br><br>        v.<br><br>PNC BANK, NATIONAL ASSOCIATION,<br>    Defendant. | Civil Action No.<br>1:21-cv-00830-SDG |

**OPINION AND ORDER**

This matter is before the Court on various motions to dismiss Plaintiff's pleadings. For the following reasons, the first motion to dismiss the Second Amended Complaint [ECF 20] is **DENIED AS MOOT**, and the second motion to dismiss the Second Amended Complaint [ECF 21] is **GRANTED**.

**I.    Background**

On February 26, 2021, Plaintiff Charles Becoat II initiated this action *pro se* on behalf of himself and the estate of his mother, Freida J. Becoat.[1] The Court granted the motion to dismiss filed by then-Defendants PNC Bank, Kristen Kinander, and Reed Smith LLP, but permitted Becoat to file an amended pleading on behalf of himself.[2] On February 25, 2022, Becoat filed his First Amended

---

1    ECF 1.

2    ECF 12.

Complaint (FAC), naming only PNC Bank as Defendant.[3] PNC then timely moved to dismiss the FAC.[4] Becoat responded to that motion by filing—without leave—a Second Amended Complaint (SAC).[5] PNC moved to dismiss the SAC as well.[6] Becoat did not respond to the second dismissal motion.

## II. The Pleadings

Because Becoat continues to proceed *pro se*, the Court construes his pleadings leniently and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted) (quotation marks omitted); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Taken in this light, the FAC alleges that, when Becoat's mother died, she left him a property in Chicago that was subject to a mortgage originated and serviced by PNC.[7] Becoat sought to assume the loan and obtain a modification or forbearance from PNC; his requests were denied, as were his

---

[3] ECF 13.

[4] ECF 15. The Court later denied this motion as moot. Feb. 17, 2023 D.E.

[5] ECF 18.

[6] ECF 21. PNC filed two motions to dismiss the SAC, with the only substantive difference appearing to be the inclusion of exhibits in the latter-filed document. *Compare* ECF 20 *with* ECF 21. This Order relies on that latter version.

[7] ECF 13, at 1.

appeals of the denial.[8] His claims are based on PNC's alleged obligation to allow him to assume his mother's loan and receive a temporary payment plan or loan modification.[9] Becoat asserts that PNC is guilty of violating his civil rights, breach of contract, wrongful foreclosure, unfair business practices, intentional infliction of emotional distress, breach of fiduciary duty, negligence, and fraud.[10]

Shortly after PNC moved to dismiss the FAC, Becoat filed his SAC.[11] The factual allegations in the SAC appear nearly identical to those in the FAC, but the SAC includes additional legal contentions. Specifically, it adds allegations that PNC violated the Fair Housing Act, violated the Illinois Consumer Fraud and Deceptive Practices Act, violated Regulation Z, and engaged in illegal dual tracking.[12] Although Becoat filed his SAC without leave of Court, PNC did not object on this basis.[13] As a result, the Court interprets PNC's motion to dismiss the SAC as its written acquiescence to Becoat's unauthorized amendment. Fed. R. Civ. P. 15(a)(2).

---

8   *Id.* at 2–3.

9   *Id.* at 4.

10   *Id.* at 1–2.

11   ECF 18.

12   *Id.* at 5.

13   *See generally* ECF 21-1.

**III.   The Motions to Dismiss**

PNC seeks dismissal with prejudice under Rule 12(b)(6).[14] To avoid dismissal on this basis, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As noted above, the Court treats the SAC as the operative pleading. *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading."). PNC puts forward several arguments about why dismissal is appropriate. First, it asserts it was never properly served.[15] Next, PNC argues that it was under no obligation to let Becoat assume his mother's mortgage.[16] Finally, it contends that the individual causes of action Becoat attempts to assert are insufficiently pleaded.[17]

---

[14]   ECF 15, at 1; ECF 21, at 1.

[15]   ECF 21-1, at 13–14.

[16]   *Id.* at 14–17.

[17]   *Id.* at 17–20.

### 1.   Service

PNC contends that Becoat did not serve it within 90 days after the original Complaint was filed.[18] In its January 28, 2022 Order dismissing the original Complaint, however, the Court directed that Becoat serve the summons and any amended pleading on PNC consistent with Rule 4.[19] This provided Becoat with additional time to effect service. Fed. R. Civ. P. 4(m). PNC was served with the summons and SAC on March 28.[20] That is well within 90 days of the Court's Order and consistent with Rule 4. PNC does not assert that there was any defect in service other than the purported lack of timeliness.[21] Because service was within the time permitted under the Court's Order, PNC is not entitled to dismissal on this basis.

### 2.   Civil Rights Violations

The SAC asserts that PNC violated Becoat's rights to fair housing and equal opportunity to access credit.[22] This claim appears to be based on PNC's denial of Becoat's requests to assume his mother's mortgage. PNC argues that the SAC fails

---

[18]   *Id.* at 13–14.
[19]   ECF 12, at 8.
[20]   ECF 19.
[21]   ECF 21-1, at 14.
[22]   ECF 18, at 1.

to allege that Becoat ever actually applied for an assumption.[23] Given that Becoat is proceeding *pro se* and this case is at the motion to dismiss stage, PNC's argument is based on an inappropriately restricted reading of the SAC. Becoat alleges that PNC was required to permit him to assume the loan and take advantage of other loss mitigation options.[24] He specifically pleads that PNC refused to allow the assumption.[25] He sent PNC an application for a loan modification and requests for loss mitigation options or a temporary payment plan.[26] His application and requests were denied.[27] These allegations are sufficient to support Becoat's contention that he sought and was denied the ability to assume the mortgage.

However, PNC correctly characterizes the SAC as being founded on the incorrect premise that PNC was *required* to permit Becoat to assume the mortgage and modify its terms.[28] None of the authorities Becoat cites mandated such a result. He has not pointed to any provision of the "Saint Germain Act of 1982" that entitles heirs "to loan assumptions and/or other loss mitigation options upon the

---

[23] *Id.* at 14.

[24] *Id.* at 1.

[25] *Id.* at 2. *See also id.* ¶ 2.

[26] *Id.* at 3 ¶¶ 7, 12.

[27] *Id.* at 3–4 ¶¶ 12, 15–19.

[28] ECF 21-1, at 14.

death of a borrower."[29] Rather, that statute prevents lenders from invoking a due-on-sale option in a loan agreement when real property is transferred to a relative because of the borrower's death. 12 U.S.C. § 1701j-3(d)(5). There is no allegation in the SAC that PNC invoked such a clause when Becoat inherited the house.

Becoat further asserts that the Consumer Protection Act permits heirs to assume loans and the Federal Housing Authority allows for heirs to assume a mortgage and "refinance, receive a temporary payment plan, forbearance or modification."[30] He has not, however, pointed to any provision of the Consumer Protection Act or the Fair Housing Act that obligated PNC to allow the assumption and modification. Nor has he demonstrated that a private right of action exists as a result of any duty created under either Act.

Becoat also relies on an interpretive rule issued by the Consumer Financial Protection Bureau under Regulation Z.[31] That rule does not support Becoat's contentions. The rule addresses instances in which a successor-in-interest has acquired title to a dwelling *and* has been added or substituted as an obligor on the

---

[29] ECF 18, at 1. *See also id.* at 4 ¶ 28.

[30] *Id.* ¶¶ 29–30.

[31] *Id.* at 5–6, 14–23.

mortgage.[32] Under those circumstances, the "Ability-to-Repay Rule" does not apply.[33] But there is no allegation in the SAC that Becoat was ever added or substituted as an obligor on his mother's mortgage—rather, his claims are based on the contention that he was denied the ability to assume the mortgage in the first place. The interpretive rule does not provide support for Becoat's primary argument that PNC was obligated to allow the assumption.

Finally, Becoat has not alleged any facts that suggest PNC's refusal to allow him to assume the mortgage or to offer a loan modification had anything to do with his race. The SAC contends that PNC employs particular practices primarily against African Americans,[34] but contains no facts that make this assertion plausible in general or as applied to Becoat himself. *Am. Dental Ass'n*, 605 F.3d at 1289. And Becoat hasn't even alleged that PNC was ever aware of his race.

In short, the SAC fails to identify any legal basis for the duty Becoat seeks to impose on PNC. He has not stated any claim that PNC violated his civil rights.

---

[32] *Id.* at 14–15.

[33] *Id.*

[34] *Id.* at 2.

### 3. State-Law Causes of Action

#### i. Jurisdiction

As the Court understands Becoat's pleading, he is asserting state-law causes of action for breach of contract, wrongful foreclosure, unfair business practices, intentional infliction of emotional distress (IIED), breach of fiduciary duty, negligence, and fraud.[35] Without a valid civil-rights claim, Becoat has not stated a federal cause of action and the Court lacks federal question jurisdiction. Further, the SAC does not establish diversity jurisdiction and the Court does not find the exercise of supplemental jurisdiction over Becoat's state-law claims appropriate.

The party invoking federal jurisdiction bears the burden of proving that such jurisdiction exists. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Neither the amount in controversy nor the existence of complete diversity of citizenship are plain from the SAC. 28 U.S.C. § 1332. Becoat has therefore failed to show the existence of diversity jurisdiction.

Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, and "a court may exercise its discretion to dismiss or retain state claims after dismissing claims subject to its original jurisdiction under 28 U.S.C. § 1367(c)(3)." *Knowles v. Hart*, 825 F. App'x 646, 650 (11th Cir. 2020). "[D]ecisions of state law should be

---

[35] *Id.* at 1–2.

avoided [by federal courts] both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), *superseded by statute on other grounds as stated in Whalen v. Carter*, 954 F.2d 1087, 1097 n.10 (5th Cir. 1992). But even if the Court did have diversity jurisdiction over Becoat's remaining state-law claims, they would be subject to dismissal.

### ii. Choice of Law

Assuming the Court could properly exercise jurisdiction over Becoat's state-law claims, Georgia's choice-of-law rules would determine which state's law should be applied.[36] *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). For contract cases, "Georgia follows the traditional rule of *lex loci contractus*." *McGill v. Am. Trucking & Trans., Ins. Co.*, 77 F. Supp. 3d 1261, 1264 (N.D. Ga. 2015). Contracts are governed by the law of the place where "the

---

[36] Although the amount in controversy may be met [ECF 18, at 4 ¶ 22], the SAC does not establish the existence of complete diversity of citizenship. It alleges only that Becoat is a "resident" of Georgia and that PNC is headquartered in Pennsylvania. *Id.* ¶ 26. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) ("Citizenship, not residence, is the key fact that must be alleged . . . to establish diversity for a natural person."); 28 U.S.C. § 1332(c)(1) (indicating that a corporation is a citizen of the state in which it has its principal place of business and its state of incorporation). Since Becoat may be able to show complete diversity given the facts alleged, the Court addresses the substantive defects in his state-law claims as an alternative basis for dismissal.

last act essential to the completion of the contract was done." *Gen. Tel. Co. of Se. v. Trimm*, 252 Ga. 95, 95 (1984) (citing *Peretzman v. Borochoff*, 58 Ga. App. 838 (1938)). For tort cases, Georgia applies *lex loci delicti*, applying the substantive law of the state where "the tort was committed." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809 (2005). That is the place "where the injury sustained was suffered rather than the place where the act was committed." *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 750–51 (2013) (citation omitted).

The property at the heart of Becoat's claims is in Illinois. Presumably for this reason, PNC relies primarily on Illinois law in its motion to dismiss the SAC.[37] But it is not clear that Georgia's choice-of-law rules necessarily point to the application of Illinois law here. Regardless, as PNC's brief suggests, Georgia and Illinois law are substantially similar for the bulk of the claims Becoat is attempting to state.[38] Accordingly, the Court applies Georgia substantive law to Becoat's causes of action unless otherwise indicated since unnecessary conflict-of-laws analyses should be avoided. *Kahn v. Visador Holding Corp.*, No. 2:07-CV-73, 2009 WL 10669538, at *3 (N.D. Ga. July 17, 2009) ("The court has reviewed the agency law of Virginia, North Carolina, and Georgia, and finds that there is no true conflict

---

[37] *See, e.g.*, ECF 21-1, at 18–21, 24–25.

[38] *Id.*

between the agency law of these states because each state law commands the same outcome. Accordingly, the court will apply Georgia law to the facts of this case.") (footnote omitted) (citations omitted).

### iii. Breach of Contract

To state a claim for breach of contract, a plaintiff must show (1) the existence of a valid contract; (2) material breach of its terms; and (3) damages. *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015). Becoat's contract claim is based on the loan contract between his mother and PNC.[39] He has pointed to no contract between himself and PNC. Nor has Becoat alleged any facts showing how PNC breached the contract (not to mention the lack of any allegations suggesting Becoat would have the right to sue on such a breach). The basis for his pleading is that PNC failed to allow him to assume that loan contract in the first place. The SAC does not put forward any facts or legal theory that demonstrates a breach of contract.

### iv. Wrongful Foreclosure

For wrongful foreclosure claims, Georgia and Illinois law significantly differ. It is not clear that such a cause of action exists under Illinois law at all. *Acevedo v. CitiMortgage, Inc.*, No. 11 C 4877, 2013 WL 1293807, at *5–*6 (N.D. Ill.

---

[39] ECF 18, at 1–2.

Mar. 26, 2013). And, as a matter of Georgia law, "a plaintiff cannot state a claim for wrongful foreclosure when no foreclosure sale has taken place." *Sparra v. Deutsche Bank Nat'l Trust Co.*, 336 Ga. App. 418, 420 (2016) (citations omitted). The SAC itself undermines any possible wrongful foreclosure claim—PNC never foreclosed on the property. Although PNC initiated foreclosure proceedings, Becoat specifically alleges that his foreclosure attorney "was able to keep the property out of foreclosure."[40] Becoat instead refinanced with another lender and ultimately sold the home.[41] This claim must therefore fail, whether it is because no wrongful foreclosure cause of action exists or because no foreclosure ever took place.

Further, to the extent Becoat is attempting to state a claim based on "illegal dual tracking,"[42] the SAC identifies no legal basis for such a private right of action. *Odum v. Specialized Loan Serv.*, No. 1:15-CV-01949-MHC-JFK, 2015 WL 11422297, at *8 (Nov. 19, 2015) (concluding that there is no legal basis for a wrongful foreclosure action under Georgia law based on dual-tracking), *report and recommendation adopted*, 2016 WL 4595936 (N.D. Ga. Jan. 13, 2016).

---

[40] *Id.* at 3 ¶¶ 10, 18.

[41] *Id.* at 4 ¶¶ 22–23.

[42] *Id.* at 5.

The SAC asserts that "dual tracking" occurs when a lender starts a foreclosure at the same time the borrower is seeking loss mitigation options from it. *Id.*

### v.     Intentional Infliction of Emotional Distress (IIED)

To recover for intentional infliction of emotional distress, a plaintiff must show intentional or reckless conduct that is extreme and outrageous, and that caused severe emotional distress. *Trimble v. Cir. City Stores, Inc.*, 220 Ga. App. 498, 499 (1996). Becoat has not identified any extreme and outrageous conduct or facts that show he suffered severe emotional distress as a result. This cause of action therefore fails.

### vi.    Negligence and Breach of Fiduciary Duty

To state a negligence or breach of fiduciary duty claim, the plaintiff must show a duty, breach, causation, and damages. *Conner v. Hart*, 252 Ga. App. 92, 94 (2001) (citing *Tante v. Herring*, 264 Ga. 694, 694 (1994)) (fiduciary duty)); *City of Douglasville v. Queen*, 270 Ga. 770, 771 (1999) (negligence). Here, the duty on which Becoat relies is PNC's purported obligation to allow him to assume his mother's loan.[43] As discussed above, however, the SAC demonstrates no such duty. Becoat's negligence and fiduciary duty claims therefore fail.

### vii.   Fraud and Unfair Business Practices

A claim for fraud requires "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting;

---

[43] *Id.* at 1, 2.

(4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Ades v. Werther*, 256 Ga. App. 8, 11 (2002) (internal quotation marks omitted) (citation omitted). Such claims must also be pleaded with particularity. Fed. R. Civ. P. 9(b). This requires a pleading to identify "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." *In re HD Supply Holdings, Inc. Sec. Litig.*, 341 F. Supp. 3d 1342, 1351 (N.D. Ga. 2018).

The SAC also specifically alleges that PNC violated the Illinois Consumer Fraud and Deceptive Practices Act.[44] To state a claim under that statute, a plaintiff must plead "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer*

---

44   *Id.* at 5.

*AG*, 922 N.E.2d 309, 314 (Ill. 2009)). Such claims must also be pleaded with particularity when they are based on allegations of deceptive conduct. *Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 754 (C.D. Ill. 2020) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)).

Becoat has not identified what false or deceptive statements PNC made, or how he relied on or was damaged by such statements. Nor has he come close to pleading with particularity facts that can support these two causes of action.

## IV. Conclusion

PNC's first motion to dismiss the Second Amended Complaint [ECF 20] is **DENIED AS MOOT**. PNC's second motion to dismiss the Second Amended Complaint [ECF 21] is **GRANTED**. To the extent Becoat attempts to assert federal claims based on PNC's alleged obligation to allow him to assume the mortgage loan or to provide him with loss mitigation options, such claims are **DISMISSED WITH PREJUDICE**. Because Becoat has not stated a federal claim, the Court declines to exercise subject matter jurisdiction over his remaining state-law claims. Those claims are therefore **DISMISSED**. Even if the Court had jurisdiction over Becoat's state-law claims, they would be subject to dismissal under Fed. R. Civ. P. 9(b) or 12(b)(6).

The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 31st day of March, 2023.

_____
Steven D. Grimberg
United States District Court Judge
